United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Bird Road Shoppes, LLC, Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 18-20001-Scola |
| | ) |
| Scottsdale Insurance Company, Defendant. | ) |

**<u>Order on Defendant's Motion for Summary Judgment</u>**

Plaintiff Bird Road Shoppes, LLC's ("Bird Road Shoppes") property suffered from water damage in June of 2017 after a drain line pipe broke. Bird Road Shoppes claims that its insurer, Defendant Scottsdale Insurance Company ("Scottsdale"), failed to provide coverage for the water damage and therefore breached their insurance contract. Plaintiff Emergency Response and Repair, LLC ("Emergency Response") provided emergency mitigation services to Bird Road Shoppes and now seeks relief from Scottsdale as an assignee of Bird Road Shoppes.

Scottsdale filed an amended motion for summary judgment (ECF No. 51) that is now ripe for the Court's consideration.[1] Upon review of the parties' briefs, the record, and the relevant legal authorities, the Court **grants** Scottsdale's motion (**ECF No. 51**).

### I.  Background

Bird Road Shoppes obtained an all-risk insurance policy from Scottsdale to cover its property, a shopping center with several business units located in Miami, Florida, from certain losses. (*See* Scottsdale's Am. Stmt. of Mat. Undisputed Facts ("Scottsdale's SUF"), ECF No. 52 at ¶ 1–2.) The policy was effective from November 8, 2016 to November 8, 2017. (*Id.* at 2)

On June 1, 2017, several of the business units in Bird Road Shoppes's shopping center sustained water damage. (*See* Scottsdale's SUF, ECF No. 52 at ¶ 5.) The units affected included a nail salon, pharmacy, clothing store, cafeteria, and cellular telephone store. (Plaintiffs' Am. Stmt. of Undisputed Mat. Facts ("Plaintiffs' SUF"), ECF No. 59 at ¶ 5.) On that same day, Bird Road Shoppes

---

[1] The Court required Scottsdale to file an amended motion in compliance with the Court's instructions. (Order, ECF No. 49.) To the extent Scottsdale's initial motion remains pending (**ECF No. 42**), the Court **denies** it as **moot**.

granted an assignment of insurance benefits and direct payment authorization to Emergency Response for its services. (Assignment, ECF No. 17-2.)

On June 26, 2017, Bird Road Shoppes's attorney reported Bird Road Shoppes's claim of loss to Scottsdale, Bird Road Shoppes's insurer. (*See* Scottsdale's SUF, ECF No. 52 at ¶¶ 2–3.) Bird Road Shoppes's estimate, which was prepared on August 3, 2017, by public adjuster Richard Iturriaga, included the alleged costs of repairs to each of the affected units, among other mitigation and plumbing costs. (*See* Iturriaga Est., ECF No. 50-1 at 100.) This estimate was for $122,019.06. Emergency Response's estimate for water mitigation and repair services performed at the subject property was for $9,634.52. (Scottsdale's SUF, ECF No. 52 at ¶ 13.) This amount is also referenced in Iturriaga's estimate. (See Iturriaga Est., ECF No. 50-1 at 102.)

Scottsdale sent a field adjuster to inspect the property on July 14, 2017.[2] (Scottsdale's SUF, ECF No. 52 at ¶ 8.) On August 29, 2017, Iturriaga reached out to an insurance representative about the status of Bird Road Shoppes's claim, to which the representative responded that it was in the process of identifying the cause of loss. (Emails, ECF No. 50-1 at 104–105.) Iturriaga responded that "[t]he cause of the water damage is due to a collapsed drain line. Parts of the drain line fell away from the building causing water to back up in five units of the building." (*Id.* at 104.)

On September 6, 2017, Bird Road Shoppes was informed by its insurer via letter that its claimed damages were not covered losses. (Letter, ECF No. 50-1 at 107). The insurer's adjuster determined that the cause of loss was "water which overflowed from toilets inside multiple tenant occupied units and caused water damage to building components." (*Id.*) The adjuster also referenced Iturriaga's asserted cause of loss. (*Id.*). The adjuster stated that "the damage to the interior of the building was the result of water that backed up, overflowed or was discharged from a sewer or drain, due to collapsed iron drain lines." (*Id.* at 111.) The letter referred to certain provisions of the relevant insurance policy and stated that the policy excludes "underground plumbing" and excludes losses resulting from "wear and tear, deterioration, and water that backs up, overflows or is otherwise discharged from a sewer or drain." (*Id.*)

On November 22, 2017, Bird Road Shoppes filed suit against Scottsdale in Florida state court, alleging a breach of contract claim. (State Compl., ECF No. 1-2 at 5–8.) Scottsdale removed this case to federal court on January 2, 2018.

---

[2] Scottsdale's SUF states that a "Nationwide field adjuster" inspected the property, *see* ECF No. 52 at ¶ 8, and the affidavit and corresponding evidence used to support Scottsdale's SUF indicates that Nationwide E & S was involved in this matter. (*See* Lewis Aff., ECF No. 50.) However, none of the parties dispute that Scottsdale is the proper defendant in this case.

(Notice, ECF No. 1). Thereafter, Scottsdale filed a motion to join Emergency Response as a plaintiff, *see* ECF No. 11, which the Court granted. (Order, ECF No. 15.) The Second Amended Complaint, which is now the operative complaint, was filed on February 1, 2018.[3] (Second Am. Compl., ECF No. 17.) The Second Amended Complaint presents two breach of contract claims, the first on behalf of Bird Road Shoppes and the second on behalf of Emergency Response.

## II. Legal Standards

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. In reviewing a motion for summary judgment, the Court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1143 (11th Cir. 2007)). So, when a conflict arises between the facts presented by the parties, the Court must credit the nonmoving party's version. *Id.* The moving party bears the burden of proof to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

## III. Analysis

In this diversity action, the Court applies Florida law. *See Living Legends Ret. Ctr., Inc. v. Lexington Ins. Co.*, 208 F. App'x 805, 807 (11th Cir. 2006). Under Florida law, "the interpretation of an insurance contract is a matter of law" to be decided by the Court. *Id.*

The Court must construe the present insurance contract "in accordance with the plain language of the polic[y] as bargained for by the parties." *S.O. Beach Corp. v. Great Am. Ins. Co. of New York*, 305 F. Supp. 3d 1359, 1363–64 (S.D. Fla. 2018) (Moreno, J.) (quoting *Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). "Where the language of an insurance contract is clear and unambiguous, there is no occasion for construction." *Killian Palms Country Club*

---

[3] Although the Second Amended Complaint initially states that Emergency Response is filing the Second Amended Complaint on Bird Road Shoppes's behalf, the rest of the pleading and the trajectory of this case do not indicate that this is the case. None of the parties sought to have Emergency Response replace Bird Road Shoppes as the plaintiff in this case, and given that the response to Scottsdale's summary judgment motion is drafted on behalf of both Plaintiffs (although the arguments are mostly presented from Bird Road Shoppes's perspective), the Court assumes that both Plaintiffs remain in this case.

*& Sports Complex v. Scottsdale Ins. Co.*, No. 11-CIV-21978-UU, 2012 WL 13012779, at *3 (S.D. Fla. Feb. 29, 2012) (Ungaro, J.) (alterations omitted) (quoting *Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1454 (11th Cir. 1989)). "[W]hen a policy does not present ambiguities, courts should defer to the plain language meaning of the policy. *Living Legends*, 208 F. App'x at 809.

However, "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." *S.O. Beach Corp.*, 305 F. Supp. 3d at 1364 (quoting *Auto-Owners Ins. Co.*, 756 So. 3d at 34). "Ambiguous insurance policy provisions—including ambiguous exclusionary clauses—are construed against the drafter and liberally in favor of the insured." *Id.* Nonetheless, "a contract should not be considered ambiguous simply because it requires interpretation or it fails to define a term." *Living Legends*, 208 F. App'x at 809.

In cases involving all-risk insurance policies like the one in this case, Florida courts construe such polices "to cover all fortuitous losses or damages other than those resulting from willful misconduct or fraudulent acts or which are otherwise expressly and plainly excluded from coverage in the policy itself." *Key Biscayne Ambassador Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, No. 16-CV-24564, 2018 WL 1863741, at *3 (S.D. Fla. Feb. 5, 2018) (Turnoff, Mag. J.) (citations omitted), *report and recommendation adopted*, No. 16-24564-CIV, 2018 WL 1859341 (S.D. Fla. Feb. 23, 2018) (Moreno, J.). Once the insured shows that the damage to the subject property occurred while the policy was in effect, the burden shifts to the insurer to prove that the loss arose from a cause that is excluded under the policy. *See id.* "[I]f the insurer meets its burden of proving that the loss is excluded, the burden then shifts back to the insured 'to establish that an exception to an exclusion applies.'" *S.O. Beach Corp.*, 305 F. Supp. 3d at 1364 (quoting *Bartram v. Landmark American Ins. Co.*, 864 F. Supp. 2d 1229, 1232 (N.D. Fla. 2012)).

Here, the parties do not dispute that the loss Bird Road Shoppes incurred occurred within the relevant time frame. And, importantly, the parties generally agree about how Bird Road Shoppes's problem started. There is no dispute that deterioration caused an underground drain line pipe to break, which allowed water to back up in the plumbing system. That back up ultimately caused water to rise through the toilets of the business units, resulting in water damage. Scottsdale argues that these causes of loss are not covered by the policy.

Scottsdale first points to policy language that specifically states that "underground pipes, flues and drains" are not covered property, *see* Building and Personal Property Coverage Form, Section A.2.m., ECF No. 50-1 at 28, and argues that any loss or costs associated with replacing the drain line pipe is

excluded. (See Mot., ECF No. 51 at 7–10.) The Plaintiffs agree, *see, e.g.*, ECF No. 60 at 3, and the Court finds no reason to consider this issue further. *See Ajax Bldg. Corp. v. Hartford Fire Ins. Co.*, 358 F.3d 795, 799 (11th Cir. 2004) ("Florida law cautions that courts must not add meaning to the terms of an insurance policy to create an ambiguity where none exists.").

Scottsdale also asserts that the plain language of the policy excludes coverage for the other losses claimed by the Plaintiffs. Specifically, Scottsdale refers the Court to the water exclusion and the wear and tear and deterioration exclusions in the policy. The policy states in relevant part:

> B. Exclusions
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
>    * * *
>
>    g. Water
>
>       * * *
>
>       (3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;
>
>       * * *
>
>       (5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3), or (4), or material carried or otherwise moved by mudslide or mudflow.
>
> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>
>    * * *
>
>       d. (1) Wear and tear;

> (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

Causes of Loss – Special Form, Section B.1.g. (3), (4) & Section B.2.d(1)–(2), ECF No. 50-1 at 58–59. "Sewer" and "drain" are both defined in the policy. "Drain" is defined as "any pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations to a 'sewer.'" Sewer or Drain Definition Endorsement – Florida, ECF No. 50-1 at 73. "Sewer is defined as "any underground pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations." *Id.* Scottsdale argues that the cause of loss was the water back up, which is an excluded cause of loss under the policy, and that the cause of the water back up, the drain line breaking, is also excluded from coverage, because the breakage was due to wear and tear and/or deterioration.

The Plaintiffs do not contest that these provisions apply. Rather, they turn the Court's attention a different provision in the policy—the collapse coverage provision—that they believe provides coverage for the drain line pipe "collapsing." That provision reads in relevant part:

> D. Additional Coverage – Collapse
>
> The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse and limited in **D.1** through **D.7**.
> 1. For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.
> 2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:
>     a. Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse . . . .

Causes of Loss – Special Form, Section D. (1)–(2), Additional Coverage – Collapse, ECF No. 50-1 at 63 ("Collapse Coverage Provision"). This provision is an

exception to another exclusion in the policy, which excludes any loss resulting from collapse. *See* Causes of loss – Special Form, Section B.1.k., ECF No. 50-1 at 60.

The Plaintiffs contend that the drain line is part of the building and because the drain line abruptly collapsed, its losses are covered by the collapse coverage provision. The Plaintiffs invoke the efficient proximate cause doctrine for support. The efficient proximate cause doctrine "provides that where there is a concurrence of different perils, the efficient cause—the one that set the other in motion—is the cause to which the loss is attributable." *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 697 (Fla. 2016). The Plaintiffs argue that the abrupt collapse of the drain line is a "covered peril" that led to the water backup, which it concedes is an "uncovered peril." (*See* Resp., ECF No. 60 at 10.) Therefore, the Plaintiffs argue that it follows that their losses are covered under the efficient proximate cause doctrine. The Plaintiffs also assert, to a lesser extent, that even if the efficient proximate cause doctrine does not apply, their losses are covered under the concurrent cause doctrine, *see id.* at 12–13, which holds that "when independent perils converge and no single cause can be considered the sole or proximate cause, it is appropriate to apply the concurring cause doctrine." *Sebo*, 208 So. 3d at 697.

Assuming that the drain line abruptly collapsed rather than merely broke as the Plaintiffs contend, the Court is not persuaded that the collapse coverage provision provides coverage for the Plaintiffs' damages under the facts of this case. The Plaintiffs assert that despite the drain line not being covered under the policy, the losses suffered in the business units are covered because the drain line is part of the building that is insured under the policy. From the Plaintiffs' perspective, part of building collapsed when the drain line collapsed. (*See* Resp., ECF No. 60 at 8.) The Plaintiffs claim that it is undisputed that the drain is part of the building and cite to testimony from its witnesses in support. (*See* Plaintiffs' SUF, ECF No. 59 at ¶ 5 ("It is undisputable that the Building's drain line is part of the Building.").) However, as Scottsdale points out, the collapse provision specifically states that it applies to "the abrupt collapse of a *building or any part of a building that is insured under this Coverage Form* or that contains Covered Property insured under this Coverage Form." (Collapse Coverage Provision, ECF No. 50-1 at 63.) The drain line pipes are not covered by the policy, as the Plaintiffs rightfully conceded, so this provision does not apply since "part of a building that is insured" did not collapse.

Even if the Court were to accept the Plaintiffs' proposition that the drain line is part of the building, Scottsdale points out the absurdity in the Plaintiffs' position given how the policy defines "abrupt collapse." The policy defines "abrupt collapse" as "an abrupt falling down or caving in of a building or any

part of a building *with the result that the building or part of the building cannot be occupied for its intended purpose.*" (*Id.*) If the Court were to follow the Plaintiffs' lead, it would have to conceive of a world in which a drain line pipe could be "occupied" for an "intended purpose." The Plaintiffs fail to point to a single case in which the court interpreted this type of collapse provision in the way it asks the Court to. The Court will not adopt the Plaintiffs' fanciful and strained interpretation of the policy. *See e.g., Marchese v. Lititz Mut. Ins. Co.*, 524 So.2d 1155, 1155 (Fla. 3d DCA 1988) (rejecting "clearly [ ] absurd interpretation" of insurance policy); *Fernandez v. U.S. Fidelity & Guarantee Co.*, 308 So. 3d 49, 49–50 (Fla. 3d DCA 1975) ("Our construction of the policy must be reasonable, practical and sensible."); *Travelers Indemn. Co. v. Milgen Dev., Inc.*, 297 So. 2d 845, 847 (Fla. 3d DCA 1974) ("If one interpretation, viewed with the other provisions of the contract and its general object and scope, would lead to an absurd conclusion, that interpretation must be abandoned and one more consistent with reason and probability adopted.").

The Court's decision is also unaffected by the parties' differing stances on whether Bird Road Shoppes was aware of the decaying state of the drain line before June 1, 2017. The Plaintiffs assert that no one was aware of the fact that the pipes were decaying before the drain line collapsed. (*See* Plaintiff's Resp., ECF No. 60 at 2 at ¶ 2; Plaintiff's SUF, ECF No. 59 at ¶ 5.) Scottsdale replies that Bird Road Shoppes was aware of the drain line pipes' condition prior to the June 1, 2017 event and cites to testimony from Raul Duarte, the owner and plumber of Duarte Clean Drain, who provided services for Bird Road Shoppes. (*See* Reply, ECF No. 61 at 7–8.) Whether the insured had knowledge of the decay is relevant because the collapse coverage provision covers an abrupt collapse caused by "building decay that is hidden from view unless the presence of such decay is known to an insured prior to collapse." (Collapse Coverage Provision, ECF No. 50-1 at 63.) The Court concludes, however, that regardless of whether Bird Road Shoppes was aware of these issues before June 1, 2017, the collapse coverage provision does not apply for the reasons already stated.

The Court ultimately finds that any losses allegedly suffered by the Plaintiffs are not covered by the policy. The damages to Bird Road Shoppes's units stemmed from a drain line breakage or collapse, which caused water to back up and rise into the units. The water and wear and tear provisions exclude these losses from coverage and the collapse coverage provision does not cover these losses. Accordingly, the Court finds there is no genuine issue of material fact and must grant Scottsdale's motion for summary judgment.

### IV. Conclusion

For the reasons stated, Scottsdale's motion for summary judgment (**ECF No. 51**) is **granted.** The Clerk shall **close** this case. Any other pending motions are **denied as moot**. The calendar call set for **February 12, 2019** and the trial set for the trial period beginning on **February 19, 2019** are hereby **canceled**.

**Done and ordered**, at Miami, Florida, on February 11, 2019.

Robert N. Scola, Jr.
United States District Judge